IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| THE HONORABLE | * | |
| CHARLES G. BERNSTEIN, | | |
| | * | |
| Plaintiff | | Civil Action No. BEL-09-2915 |
| | * | |
| v. | | |
| | * | |
| THE STATE OF MARYLAND, *et al.*, | | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION
FOR PRELIMINARY INJUNCTION AND IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff the Hon. Charles G. Bernstein submits this memorandum to address, briefly,

several of the more notable points raised in Defendants' motion to dismiss and response to Judge

Bernstein's motion for a preliminary injunction ("Defs. Mem."). In view of the short deadlines

(and the fact that Defendants did not serve their motion and memorandum until Saturday

morning, November 21), counsel will address the balance of Defendants' arguments at the

Tuesday motions hearing.

**I.      Plaintiff's Motion for a Preliminary Injunction Should Be Granted**

Defendants' arguments in opposition to Plaintiff's Motion are inapposite or inaccurate.

**A.      Likelihood of Success on the Merits**

Shorn of its rhetoric, Defendants' submission does little to undermine Judge Bernstein's

showing that he is likely to prevail on the merits. Defendants' argument that *Gregory v.

Ashcroft*, 501 U.S. 452 (1991), flatly forecloses Plaintiff's claims is particularly misleading. In

support of their argument, Defendants note that a provision in the Missouri Constitution permits special assignment of retired judges and another provision could be construed as allowing for persons over the age of 70 to become judges and not face mandatory retirement. *See* Defs.' Mem. 11-12. This is all very interesting; it is also utterly beside the point. What Defendants fail to inform the Court is that the issue presented in this case was not raised, briefed, noted, considered, or decided by the parties or the Court in *Gregory*. Moreover, the Missouri constitutional provision pertaining to special assignment of retired judges was not in dispute in *Gregory*, and the argument by Plaintiff here was not once mentioned, made, or resolved. That the Missouri Constitution may be vulnerable to a challenge similar to the one raised by Plaintiff in this case has no bearing on the fact – and fact it is – that *Gregory* did not decide, in *dicta* or otherwise, the question presented here.

Plaintiff has not claimed – and does not contend -- that a general prohibition on judicial service over the age of 70 constitutes a violation of the Fourteenth Amendment because Plaintiff recognizes that argument is foreclosed by *Gregory*. Rather, Plaintiff has brought a distinct claim, a claim essentially identical to one recently embraced by the Supreme Court of Illinois. *See Maddux v. Blagojevich*, 911 N.E.2d 979 (Ill. 2009).[1] In short, *Gregory* does not foreclose this claim because it did not discuss this claim and *Gregory*'s legal reasoning its simply inapposite to the question presented here.

---

[1] Interestingly, Defendants relegate their discussion of *Maddux*, which is by far the case most analogous to this one, to a substance-free footnote. *See* Defs.' Mem. 22-23 n.5. There Defendants state, without analysis, that *Maddux* "is distinguishable both factually and legally." *Id.* Such summary treatment is surprising considering that *Maddux* represents the *only* comprehensive discussion of the question squarely presented by this case: Is the mandatory retirement of sitting judges at a particular age irrational when persons older than that age are eligible to become judges and never face mandatory retirement? Plaintiff, and the Supreme Court of Illinois, believe that such a scheme is irrational and unconstitutional.

2

The Maryland Constitution, without a rational basis, permits persons above the age of 70 to be nominated, elected, and/or specially-assigned to judicial service but mandatorily retires presently-serving judges upon their attainment of age 70. *See* Md. Const., Art. IV, § 3 ("Each of the *said Judges shall hold his office* for the term of fifteen years from the time of his election, and until his successor is elected and qualified, or *until he shall have attained the age of seventy years*, whichever may first happen, and be re-eligible thereto until he shall have attained the age of seventy years, and not after.") (emphasis added); *see also id.* § 3A ("The [special assignment] provisions of this section apply, not withstanding provisions appearing elsewhere in this Article pertaining to retirement of judges upon attaining age 70."). These are precisely the sort of impermissible and irrational distinctions that the Constitution prohibits. There is no rational basis justifying these rules: while maintaining a vigorous judiciary is a legitimate interest for a state to advance, the scheme in Maryland is unrelated to that interest as it permits persons over 70 to serve as judges by appointment, election, and/or special assignment as long as they are not currently serving at the time they attain 70 years of age. This scheme serves *no* purpose but to harm Plaintiff and similarly-situated persons.

Consider, for example, the Maryland Constitution's special assignment provision. That provision unambiguously allows persons over the age of 70 to continue serving as judges, including as judges of the Circuit Court for Baltimore City. *See* Md. Const., Art. IV, § 3A(b). There is no rational distinction between presently-serving judges aged 69 years and 365 days and retired judges aged 69 years and 366 days; Article IV, § 3A thus in and of itself requires that this Court invalidate the Maryland scheme and permit Judge Bernstein to continue his judicial service unabated.

3

Defendants' interpretations of the provisions in question are at odds with law and logic in other ways, too. For example, Article IV, § 2, establishes the "Qualifications" for service as a judge. Md. Const., Art. IV, § 2. That section makes eligibility for judicial service dependent upon a *minimum* age requirement, but no maximum age limit:

> The Judges of all of the said Courts shall be citizens of the State of Maryland, and qualified voters under this Constitution, and shall have resided therein not less than five years, and not less than six months next preceding their election, or appointment, as the case may be, in the city, county, district, judicial circuit, intermediate appellate judicial circuit or appellate judicial circuit for which they may be, respectively, elected, or appointed. They shall be not less than thirty years of age at the time of their election or appointment, and shall be selected from those who have been admitted to practice law in this State, and who are most distinguished for integrity, wisdom and sound legal knowledge.

Md. Const. Art. IV, § 2;

Thus, being under the age of 70 is not a "Qualification" – the title of the provision -- for judicial service.[2] *Cf. id.* Art. III, § 29 ("[E]very Law enacted by the General Assembly shall embrace but one subject, and that shall be described *in its title*."). Additionally, even putting aside the debate over the mandatory retirement provision governing presently-serving judges and the fact that judges can be specially-assigned over the age of 70, the unambiguous text of the provision demonstrates the flaw in Defendants' position. Article IV, § 3 reads, in relevant part:

> [T]he Judges of the several Courts other than the Court of Appeals or any intermediate courts of appeal shall, subject to the provisions of Section 5 of this Article of the Constitution, be elected in Baltimore City and in each county, by the qualified voters of the city and of each county, respectively, all of the said Judges to be elected at the general election to be held on the Tuesday after the first Monday in November, as now provided for in the

---

[2] Moreover, Article IV, § 3 is entitled "Election of Judges," "Term of Office," and "Retirement." Md. Const., Art. IV, § 3. Thus, this section addresses the term of office and retirement of *presently-serving* judges (who are the only persons having a term of office, and the only persons who can be retired), and Defendants' argument that the disputed provision constitutes a general limitation or qualification requirement is unpersuasive.

4

> Constitution. Each of the said Judges shall hold his office for the term of fifteen years from the time of his election, and until his successor is elected and qualified, or until he shall have attained the age of seventy years, whichever may first happen, and be re-eligible thereto until he shall have attained the age of seventy years, and not after.

*Id.* Art. IV, § 3.

Defendants claim that the last-quoted sentence constitutes a general bar on judges serving over 70 years of age. However, that sentence applies only to "[e]ach of the *said Judges*." *Id.* (emphasis added). The phrase "said judges" requires the reader to refer back to the prior sentence, which defines the universe of "said judges," *i.e.*, those persons to whom the disputed provision applies. That sentence quite clearly brings only previously *elected judges* within its scope: "Except for [various Judges], the Judges of the several Courts . . . shall . . . be elected . . . by the qualified voters of the city and of each county, respectively, all of the said Judges to be elected at the general election to be held on the Tuesday after the first Monday in November, as now provided for in the Constitution." *Id.* Thus, even if the disputed provision does operate to generally preclude service over 70 (and it does not), the provision itself applies only to previously elected judges. Thus, it permits the *appointment* and full service of persons over the age of 70, again creating an irrational distinction between judges who turn 70 while in office, and other persons over 70.[3]

---

[3] It is unclear whether Defendants would like this Court to focus on the actual language of the Constitution, *see* Defs.' Mem.17, or whether Defendants would have this Court "eschew the fine grammatical parsing of isolated words" and have the text "yield" to their view of what the Constitution *should* say, *id.* at 19. It is Plaintiff's position that the language of the Constitution controls. *Cf. Maddux*, 911 N.E.2d at 990-91 ("Statutory constructions based on looking beyond the text of a statute are disfavored since a court has no authority to depart from the law's plain meaning or alter its language in a way that constitutes a change in the plain meaning of the words actually adopted by the legislature. The same is true in construing constitutional provisions, perhaps even more so given that the language in question was what was presented to the citizens who voted to approve it.") (internal citations and quotations omitted).

{09399\0\00648684.DOCMv2 }

Defendants' argument concerning the fact that the Maryland Constitution formerly contained the words "whilst in office," is irrelevant. *See* Defs.' Mem. 17-18. The old version of the provision, cited by Defendants, addressed the power of the legislature to extend a presently-serving judge's term of office past his 70th birthday. *See id.* Therefore, it is unsurprising – and irrelevant to the analysis here – that the former provision contained the words "whilst in office:" the *entire provision in which those words were contained* was deleted. This straw man argument deserves little attention.[4] The current provision – which, again, says that a judge "shall hold his office . . . until he shall have attained the age of seventy years" – means exactly what it says.

Defendants also, correctly this time, point out that "[n]either perfection nor mathematical nicety are required to satisfy rational-basis scrutiny under the Equal Protection Clause." Defs.' Mem. 24. Plaintiff agrees that states can make imperfect and overly-broad classifications. For example, no one disputes that many men and women over the age of 70 are mentally and physically up to the job of being a judge (while many under 70 may not be), but the Supreme Court nonetheless upheld the age limit at issue in *Gregory.* However, the fact that classifications subject to rational basis review can be roughly approximate to their purpose does not mean that

---

[4] The gratuitous tenor and tone of Defendants' Memorandum – which implies that Judge Bernstein is an "eccentric" who has created a "spectacle" and somehow violated his judicial oath, *see, e.g.,* Defs.' Mem. 1 – is a bit surprising. Defendants appear shocked that Judge Bernstein makes an argument based on what the Constitution *says* rather than what the Defendants thought it said before Plaintiff filed this suit or what the Defendants think the Constitution should say. However, Defendants' own counsel has observed how little attention has been paid to the constitutional article in question:

> The final sentence of § 5 adds an additional qualification for new appointees (not reappointees) to the circuit court, that they must be able to finish their term of office before turning 70 years old. *In effect, this means that a new judicial appointee should be no more than 54 years old at the time of appointment. A cursory review of the ages of recent judicial appointees will confirm that this provision of the constitution has not been observed.*

Dan Friedman, *The Maryland State Constitution: A Reference Guide,* 157 (Praeger 2006) (emphasis added). The fact that a law has been misunderstood, misapplied, or misread does not foreclose a person from seeking relief from its unconstitutional terms.

6

states can propagate wholly *irrational* schemes. Thus, while a state can impose age limits on judges, it cannot irrationally and arbitrarily foreclose active judges from continuing to serve once they reach age 70 while allowing older persons to become judges. Rational schemes with harsh results are permissible; irrational ones are unconstitutional regardless of results.[5]

Plaintiff has made a clear showing that he will likely succeed on the merits of his claim, and his Motion should be granted.

### B.   Irreparable Harm

Defendants' discussion of irreparable harm misses the mark by a wide margin. To begin with, Defendants are simply wrong in asserting that *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365 (2008), and *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342 (4th Cir. 2009), changed the long-standing rule that the violation of individual constitutional rights constitutes *per se* irreparable harm. *See* Plaintiff's Motion for Preliminary Injunction, pp. 7-8. *Winter* and *The Real Truth* clarified the standards applicable to preliminary injunction motions. In particular, those cases hold that movants must show a *likelihood* of irreparable harm, and not merely a possibility thereof. But those cases did nothing to alter what *is* and *is not* irreparable harm, and the notion that the cases somehow held that the violation of individual constitutional rights does not constitute irreparable harm is baseless.

In fact, that notion is belied by the cases themselves. *Winter* did not involve personal constitutional claims, and *The Real Truth* explicitly reiterated that constitutional violations can constitute irreparable harm: "The district court recognized that *chilling speech constitutes irreparable injury.*" *The Real Truth*, 575 F.3d at 351 (emphasis added). Without preliminary

---

[5] Defendants' laundry list of potential rational bases, *see* Defs.' Mem. 22-23, are not relevant here. As discussed *supra*, this is not a case about the constitutionality of a flat, across-the-board age limit for judges, even if Defendants would prefer that it was. That issue has been definitively decided in *Gregory*.

relief, Plaintiff's individual constitutional right to equal protection of the laws will be violated, and such violation constitutes *per se* irreparable harm. And nothing makes the point clearer than the Fourth Circuit's 2009 holding in *W. Va. Club Owners v. Musgrave*, No. 07-2032 (4th Cir.), which cited and applied the Supreme Court's ruling in *Winter* and held expressly that when a plaintiff alleges a constitutional violation (there, the First Amendment), "the claimed irreparable harm is inseparably linked" – and properly so – "to the likelihood of success on the merits." (Slip op. at 9)

Additionally, Judge Bernstein maintains that he will suffer irreparable harm because he risks losing any chance of obtaining the ultimate relief sought in this case – to wit, his retention of his position as an Associate Judge of the Circuit Court for Baltimore City. Although Defendants aver that mandamus relief is available under Maryland law in Maryland state courts, they cannot and do not show that such relief is available in this action filed pursuant to federal law, governed by Fed. R. Civ. P. 65, and lodged in federal court. Moreover, the case relied upon by Defendants, *Forami v. Reynolds*, 248 Md. 267 (1967), involved the affirmance of a lower court's order that a municipal police officer be reinstated. Such a situation is a far cry from the instant proceeding, which, if Defendants' position on irreparable harm is to be accepted, would involve a federal judge dislodging a duly appointed or elected state court judge in favor of his or her predecessor. Additionally, Defendants' passing claim that back pay may be available to Plaintiff here, *see* Defs.' Mem. 33, is generous, but legally inaccurate, *see, e.g., Edelman v. Jordan*, 415 U.S. 651 (1974); *see also* Pl.'s Mem. in Support of Mot. for Preliminary Injunction; *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003).

8

For the foregoing reasons, and for the reasons set forth in Plaintiff's Memorandum in Support of the Motion, Plaintiff has made a clear showing that, absent preliminary relief, he is likely to suffer irreparable harm.

### C.   Equities

As set forth in Judge Bernstein's preliminary injunction motion, the equities here weigh heavily in his favor. In particular, he risks suffering severe and irreparable harm, *see supra*, including but not limited to the violation of his constitutional rights. Additionally, Judge Bernstein is indisputably qualified to serve as an Associate Judge of the Circuit Court for Baltimore City, and was elected by the voters of Baltimore City to a fifteen-year term in 2008. The State, on the other hand, will suffer, at most, a brief delay in its power to appoint a new judge; considering that the State may not have a right to make such an appointment in light of the merits of Plaintiff's claim, the State's interest here is both questionable and minimal.

### D.   Public Interest

It is true that this Court should pay "particular regard" to the public interest factor in deciding whether to grant a preliminary injunction. *The Real Truth*, 575 F.3d at 347 (quoting *Winter*, 129 S. Ct. 376-77). Again, however, this factor favors Plaintiff: "[s]urely, upholding constitutional rights serves the public interest." *Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003); *see also Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (to the same effect). Moreover, the public will not be harmed – indeed, the public interest will be advanced – by having an experienced, elected, and qualified Judge continue his term of service while this litigation unfolds.

9

## II.      Defendants' Motions Should Be Denied

Defendants have moved to dismiss Plaintiff's case for lack of jurisdiction, or to abstain

from deciding Plaintiff's case. Alternatively, they have moved to certify one question raised by

this case (but only one) to the Maryland Court of Appeals pursuant to Md. Code Ann., Cts. &

Jud. Proc. §§ 12-601, *et seq*.

### A.      Dismissal for Lack of Jurisdiction

Defendants contend that this Court does not have jurisdiction because this case presents

as "insubstantial federal question where the claim is foreclosed by Supreme Court precedent."

Defs.' Mem. 10. This argument is a non-starter for the reasons discussed *supra*: this claim is not

foreclosed by Supreme Court precedent; *Gregory* does not mention or consider the question

raised here: and the claim actually pled and resolved in *Gregory* has, quite intentionally, not been

pursued in this case. *Gregory* is relevant here insofar as it establishes that Defendants need put

forth only a rational basis to defend the disputed provisions – but a rational basis is precisely

what Defendants here do not have.

Accordingly, it is simply inaccurate to state that the very different claim raised by Judge

Bernstein here – which was recently embraced by the Supreme Court of Illinois, *see Maddux*,

911 N.E.2d 979 – has been "foreclosed by Supreme Court precedent." Defs.' Mem. 10.

### B.      Failure to State a Claim

Defendants also move to dismiss Plaintiff's case on the ground that he fails to state a

claim. *See* Defs.' Mem.13-24. This argument simply disputes the merits of Plaintiff's case. As

discussed *supra*, Defendants are incorrect in their understanding of the Maryland constitutional

provisions in question, and Plaintiff has shown a likelihood of success on the merits.

Accordingly, the motion to dismiss should be denied. However, because Defendants raise one new issue in this motion, Plaintiff will respond to it here.

Defendants assert that, even if Plaintiff's reading of the disputed provisions is correct, he has no cognizable equal protection claim because he cannot show unequal treatment. *Id.* at 20-21. This argument is logically and legally unsound, as it seeks to compare the class of discriminated persons not to a similarly-situated group, but rather to *itself.* Thus, Defendants state, Judge Bernstein is in the same boat as all currently-serving 69 year-old judges. True enough, but also a non-sequitur. The comparison relevant to this case is between presently-serving 69-year-old judges and judges appointed or elected *after the age of 70.* Defendants' attempt to compare a 69-year-old judge to another 69-year-old judge is confused, and confusing; it is like saying that Linda Brown, plaintiff in *Brown v. Board of Education*, 347 U.S. 483 (1954), could not show unequal treatment because she was in the same boat as other African American schoolchildren in Topeka, Kansas.

Defendants' motion to dismiss for failure to state a claim simply recycles the unsuccessful arguments made by Defendants on the merits of Plaintiff's case. The motion should be denied.

### C.   Abstention and Certification

Defendants also move this Court to abstain pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), or to certify the state constitutional interpretation issue to the Maryland Court of Appeals pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 12-601, *et seq.* Plaintiff believes that neither remedy is appropriate here: this Court is entirely capable of reading and applying the relevant provisions, and of rendering a judgment on Plaintiff's federal constitutional claim. Moreover, federal courts have a "virtually unflagging obligation . . . to

11

exercise the jurisdiction given them." *Colorado River Conservation Dist. v. United States*, 424

U.S. 800, 817 (1976); *see also Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462

(4th Cir. 2005) ("[W]e recognize the general rule that federal courts are bound by a virtually

unflagging obligation . . . to exercise the jurisdiction given them. Federal courts have no more

right to decline the exercise of jurisdiction which is given, than to usurp that which is not.")

(internal citations and quotations omitted).

However, if this Court were inclined to consider one of these two options, Plaintiff

suggests that so-called *Pullman* abstention would be wholly inappropriate here. Under these

circumstances, where Plaintiff posits a serious violation of his individual constitutional rights

and this Court has the power and ability to certify any disputed state law issue to the Maryland

Court of Appeals, it would be extremely prejudicial and unfair to abstain altogether. *See, e.g.,*

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ("Certification today covers

territory once dominated by a deferral device called '*Pullman* abstention,' after the generative

case, *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)."); *Bellotti v. Baird*, 428

U.S. 132, 151 (1976) (noting that "the availability of certification greatly simplifies the

[abstention] analysis"). Additionally, if this Court did decide to certify the issue to the Maryland

Court of Appeals, it most certainly should grant the preliminary injunction motion in the interim

period.[6]

---

[6] Also, there is no dispute about the meaning and interpretation of the special assignment provision found at Article IV, § 3A. Thus, there is no basis to certify that issue to the Maryland Court of Appeals, and the Court can and should proceed forward to judgment on that issue regardless of what the Court chooses to do with the other constitutional interpretation questions.

12

### III.   **Conclusion**

For the reasons stated herein, Plaintiff's Motion should be granted, and Defendants' Motions denied.[7]

_____/s/_____
Andrew Jay Graham (Federal Bar No. 00080)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030 – Telephone
(410) 539-1269 – Facsimile
AGraham@kg-law.com

_____/s/_____
Michael Schatzow (Federal Bar No. 00252)
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland  21202
(410) 244-7592 – Telephone
(410) 244-7742 – Facsimile
MSchatzow@venable.com

_____/s/_____
Cyril V. Smith (Federal Bar No. 00332)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 949-1145 – Telephone
(410) 659-0436 – Facsimile
CSmith@zuckerman.com

*Attorneys for Plaintiff*
*the Honorable Charles G. Bernstein*

---

[7] Defendants also move this Court to dismiss the State of Maryland and the Maryland General Assembly as defendants to this action.  Even if this Court grants that motion, Plaintiff's case and claims remain alive and well against defendant Governor O'Malley, and Defendants do not suggest that Judge Bernstein cannot obtain complete relief against that defendant.

13